IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAB DISTRIBUTORS, LLC, )
)
        Plaintiff, )
)
        v. )   Case No. 09 C 5831
)
LONDON LUXURY, LLC, et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants London Luxury, LLC ("London Luxury"), American Textile Company, Inc. ("American Textile"), and Target Corporation ("Target") have filed a motion seeking a stay of this case pending the United States Patent and Trademark Office's ("PTO") reexamination of the patent-in-suit. For the following reasons, the Court grants the motion to stay.

## LEGAL STANDARD

"The decision whether to stay a case pending PTO reexamination is entrusted to the Court's sound discretion." *Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*, No. 08 C 2389, 2008 WL 4395854, at *2 (N.D. Ill. Sept. 25, 2008); *see also Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, No. 00 C 4623, 2008 WL 1848142, at *5 (N.D. Ill. Apr. 23, 2008). In deciding whether to enter a stay, courts "consider the following factors: (i) whether a stay will unduly prejudice or tactically advantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (citing *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL

422697, at *1 (N.D. Ill. Mar. 3, 2004)); *see also Se-Kure Controls, Inc. v. Sennco Solutions, Inc.*, 675 F. Supp. 2d 877, 879 (N.D. Ill. 2009). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 1651 (1997).

## FACTUAL BACKGROUND

Plaintiff, JAB Distributors, LLC, filed its complaint on September 18, 2009, alleging that certain products that Defendants made and/or sold infringed its Patent Number 7,552,489. (R. 1, Complaint.) Defendants filed answers that raised numerous affirmative defenses and asserted declaratory-judgment counterclaims for non-infringement and invalidity. (R. 31, London Luxury's Answer; R. 52, American Textile's Answer; R. 53, Target's Answer.) Since Plaintiff filed its complaint, it has settled with seven other defendants. (R. 85, Pl.'s Resp. Br. at 2.)

On January 13, 2010, Defendants London Luxury and American Textile filed a Request for *Ex Parte* Reexamination with the PTO, requesting a reexamination of all issued claims of the patent-in-suit. (R. 80-1, Request for Reexamination.) The PTO granted Defendants' request on February 22, 2010, stating that "[a] substantial new question of patentability affecting claims 1-16 of the United States Patent Number 7,552,489 is raised." (R. 80-2, Exhibit 2, PTO Order Granting Request for *Ex Parte* Reexamination at ¶ 1.) At the parties' request, on March 11, 2010, the Court entered an order temporarily staying all discovery in this case pending resolution of the motion to stay. (R. 82, 3/9/10 Stipulation at 1; R. 83, 3/11/10 Minute Order.)

## ANALYSIS

### I.     Patent Reexamination

The U.S. Code provides that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under [35

U.S.C. § 301]." 35 U.S.C. § 302. "Within three months following the filing of a request for reexamination . . . , the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." 35 U.S.C. § 303(a). If the Director determines that there is a "substantial new question of patentability affecting any claim of a patent," the PTO will reexamine the patent. 35 U.S.C. § 304. "Reexamination may entail changes in the claims, except that the claims can not be enlarged." *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997). "Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Id.* at 1250. (noting that "'[i]dentical' does not mean verbatim, but means at most without substantive change"). The reexamination proceedings, "including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

"The purpose of the reexamination procedure is to permit a patentee or other interested person to obtain review and if necessary correction of the claims resulting from the initial examination of the patent." *Bloom En'g*, 129 F.3d at 1249; *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) ("'The intent underlying reexamination is to "start over" in the PTO with respect to the limited examination areas involved, and to *re* examine the claims, and to *examine* new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding.'" (quoting *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985), with emphasis in original)). As the Federal Circuit has noted:

3

> The [reexamination] bill's proponents foresaw three principal benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office. . . . Third, reexamination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents".

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985) (quoting 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier)).

## II.     Stay Pending Reexamination

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936); *see also Pfizer*, 640 F. Supp. 2d at 1007. That inherent authority includes "'the authority to order a stay pending conclusion of a PTO reexamination.'" *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 c 1086, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008) (quoting *Ethicon*, 849 F.2d at 1426-27); *see also Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998); *Panduit Corp. v. Chatsworth Prods., Inc.*, No. 04 C 4765, 2005 WL 577099, at *1 (N.D. Ill. Mar. 2, 2005).

Staying proceedings pending the resolution of a patent reexamination may have numerous benefits, including streamlining the case, simplifying or eliminating remaining issues, promoting settlement, alleviating discovery problems, providing the Court with the PTO's expert review of prior art, and reducing the length and expense of litigation. *See Baxter Int'l*, 2008 WL 4395854, at *3; *Sun-Flex Co., Inc. v. Softview Computer Prods. Corp.*, No. 89 C 296, 1989 WL 117976, at *1 (N.D. Ill. Sept. 27, 1989). "These benefits are maximized when the stay is sought

early in the litigation, and consequently courts 'frequently issue stays pending reexamination when the litigation is at an early stage.'" *Baxter Int'l*, 2008 WL 4395854, at *3 (quoting *Arrivalstar S.S.*, 2008 WL 2940807, at *2). The Court will stay this case because doing so will (1) not unduly prejudice Plaintiff or provide Defendants with a tactical advantage, (2) likely simplify the issues, and (3) reduce the overall burdens of litigation. *See Pfizer*, 640 F. Supp. 2d at 1007.

### A. Undue Prejudice and Tactical Advantage

The amount of time it will take for the reexamination proceedings to transpire will not unduly prejudice Plaintiff or provide Defendants with a tactical advantage. Plaintiff's claim that the reexamination "will likely take 4 to 8 years" (R. 85, Pl.'s Resp. Br. at 6) appears to be exaggerated. Pursuant to the applicable regulations, Plaintiff's response date in the reexamination proceedings has come and gone, *see* 37 C.F.R. § 1.530(b), and Defendants' reply date is in June.[1] *See* 37 C.F.R. § 1.535. Furthermore, the PTO statistics to which Plaintiff has directed the Court provide that *ex parte* reexaminations have an average pendency of 25.4 months, with only a modest increase in length in recent quarters. (*See* R. 85-3, Ex. 15, 12/31/09 *Ex Parte* Reexamination Filing Data at 2; R. 85-3, Ex. 16, PTO Reexaminations – FY 2010 at 1.) Those statistics also reveal that the median *ex parte* reexamination pendency is 19.8 months. (R. 85-3, Ex. 15, 12/31/09 *Ex Parte* Reexamination Filing Data at 2.)

Additionally, there is a statutory mandate for the PTO to proceed diligently. As the Federal Circuit has commented, the reexamination statutes require that "*all* reexamination

---

[1] Defendants contend that the reexamination proceedings will be shortened because Plaintiff has not filed a response. (*See* R. 87, Defs.' Reply Br. at 6 n.5.)

procedures *will* be conducted with *special dispatch*." *Ethicon*, 849 F.2d at 1426 (emphasis in original) (noting that "the ordinary, contemporary, and common meaning of special dispatch envisions some type of unique, extraordinary, or accelerated movement"). "In fact, the PTO itself has interpreted special dispatch to require that 'reexamination proceedings will be "special" throughout their pendency' in the office, and provides for an accelerated schedule." *Id.* (quoting MPEP § 2261). A separate PTO internal rule provides that where "litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible." MPEP § 2686.04(1); *see also Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.*, No. 02 C 2178, 2002 WL 1160170, at *1 (N.D. Ill. May 29, 2002).

To the extent Plaintiff argues that it will be prejudiced by incurring monetary losses during the stay, it "do[es] not appear to be at risk of suffering any pecuniary prejudice, because interest will accrue in [its] favor if [it is] determined to be entitled to monetary relief." *Arrivalstar S.S.*, 2008 WL 2940807, at *2 (internal quotation omitted); *see also SP Techs., LLC v. HTC Corp.*, No. 08 C 3760, 2009 WL 1285933, at *3 (N.D. Ill. May 6, 2009); *Rockwood Pigments*, 2002 WL 1160170, at *1; *Clintec Nutrition Co. v. Abbott Labs.*, No. 94 C 3152, 1995 WL 228988, at *3 (N.D. Ill. Apr. 14, 1995). Furthermore, Plaintiff's claim that it will suffer irreparable harm is undermined by the fact that its complaint seeks monetary damages and does not seek preliminary-injunctive relief. *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987).

While Plaintiff contends that it is losing customers and market share on "one of [its] most important products" due to Defendants' actions, it does not quantify the lost customers or market share. (R. 85-4, James Bell Decl. at ¶ 11.) Indeed, it contends that the market share "impact is

6

impossible to quantify precisely" (*Id.* at ¶ 8) and does not give any indication of the extent of the alleged harm beyond claiming that it is irreparable.  Plaintiff also has not disputed that American Textile and Target have ceased all sales of the allegedly infringing products (R. 85, Defs.' Reply Br. at 7), and although patents have a limited lifetime, at least one court has entered a stay pending resolution of a reexamination even where the party opposing the stay argued that the patent-in-suit might expire before completion of the reexamination. *Tap Pharm. Prods.*, 2004 WL 422697, at *1.

A stay will not unduly prejudice Plaintiff, and there is no indication that Defendants have requested a stay to delay or to gain a tactical advantage. *See Sun-Flex*, 1989 WL 117976, at *1. Accordingly, this factor weighs in favor of granting a stay.

### B. Simplifying of the Issues and Streamlining the Trial

Plaintiff further argues that by the time the stay is lifted, "[m]emories will have faded, and some witnesses may no longer be available." (R. 85, Pl.'s Resp. Br. at 10.)  The chances of that happening will be reduced, however, by the pending PTO reexamination, which may help keep witnesses' memories fresh.  Further, Plaintiff's argument that the reexamination will only address one issue – obviousness – out of the many presented in this case (*id.* at 11) ignores that the reexamination will evaluate all claims of the patent-in-suit and may therefore simplify the issues in this case.

Courts have rejected Plaintiff's blanket claim that the reexamination will not benefit the judicial proceedings.  As the Federal Circuit has found, the legislative history of the reexamination statutes "shows that Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would

7

employ the PTO's expertise." *Ethicon*, 849 F.2d at 1426. "One purpose of the reexamination procedure is to eliminate trial of [an] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). "In other words, the PTO's expert analysis of prior art may simplify and/or facilitate resolution of the case whether or not [the PTO is persuaded] to amend or invalidate some or all of the claims or patents at issue." *Arrivalstar S.S.*, 2008 WL 2940807, at *2 (noting that "it makes more sense to concentrate on proceedings before the subject matter experts than to require the parties to fight a two-front battle before both the PTO and the Court"); *see also Baxter Int'l*, 2008 WL 4395854, at *3. The reexamination will simplify the issues and streamline the trial, which weighs in favor of staying these proceedings.

## C. Reducing the Burden of Litigation

Finally, the reexamination will likely reduce the overall burden of litigation. Plaintiff argues that "a significant amount of work has already occurred in this case," noting that the parties have served initial contentions and responses and have produced certain documents pursuant to the Local Patent Rules. (R. 85, Pl.'s Resp. Br. at 15.) Plaintiff does not dispute, however, that the parties have not answered interrogatories, taken depositions, filed substantive motions, briefed claim-construction issues, or requested a trial date. Accordingly, "the litigation is in its infancy," which militates in favor of granting a stay. *Arrivalstar S.S.*, 2008 WL 2940807, at *2; *see also Global Patent Holdings*, 2008 WL 1848142, at *5; *Tap Pharm. Prods.*, 2004 WL 422697, at *1; *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987) (granting a stay in a case that had proceeded for eighteen

8

months and had included "significant, costly discovery," including depositions). Further, Plaintiff has alleged that the parties' respective principal places of business are in Illinois, New York, Minnesota, and Pennsylvania. (R. 1, Compl. at ¶¶ 2, 4, 7.) A stay may avoid the significant expenses related to litigating a case that involves parties located in multiple states throughout the country.

*Baxter Int'l*, 2008 WL 4395854, and *Enprotech Corp. v. Autotech Corp.*, No. 88 C 4853, 1990 WL 37217 (N.D. Ill. Mar. 16, 1990), do not save Plaintiff's efforts to avoid a stay. In *Baxter* the court declined to stay the case in light of an *inter partes* reexamination, *id.* at *4-5, but those proceedings are typically lengthier than the *ex parte* reexamination proceedings here. Further, in *Enprotech* the court declined to enter a stay due in large part to the significant amount of time that the parties had already spent on the judicial proceedings. *Id.* at *1 ("Most compelling . . . is the fact that discovery here is almost completed and the case is set for trial."). As explained above, this case has not progressed significantly and, in fact, is in its very early stages.

"There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope." *Tap Pharm. Prods.*, 2004 WL 422697, at *2. Even the statistics to which Plaintiff directs the Court provide that in 76% of *ex parte* reexaminations the PTO cancels or changes the claims. (R. 85-3, Ex. 15, 12/31/09 *Ex Parte* Reexamination Filing Data at 2.) Those statistics are consistent with other courts' observation that "'generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%.'" *Arrivalstar S.S.*, 2008 WL 2940807, at *3 (quoting *Tap Pharm. Prods.*, 2004 WL 422697, at *2).

While the Court does not base its decision in substantial part on these statistics, they

"suggest a very real possibility that, if this litigation proceeds in tandem with the PTO reexamination proceedings, the parties will have wasted their resources litigating issues that ultimately may be mooted by the PTO's findings." *Id.* It would be unwise to welcome that possibility. Ultimately, "'even if issues remain to be litigated after the reexamination[ is] completed'-as may well be the case here-'the cost and scope of the remaining litigation are likely to be substantially reduced.'" *Id.* (quoting *Sun-Flex*, 1989 WL 117976, at *1). As such, this factor supports a stay in this case.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion and stays these proceedings. Once the PTO completes its reexamination and the stay is lifted, the Local Patent Rules will help ensure that the case is resolved expeditiously.

Dated: May 11, 2010                                     ENTERED:

                                                        _____
                                                        AMY J. ST. EVE
                                                        United States District Court Judge