**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISIONS**

| | | |
|---|---|---|
| JAB DISTRIBUTORS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09-CV-5831 |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| LONDON LUXURY, LLC, | ) | |
| TARGET CORPORATION, and | ) | |
| AMERICAN TEXTILE COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff's motion to compel Defendant London Luxury, L.L.C., to respond to certain of Plaintiff's discovery requests. For the following reasons, the Court grants the motion.

**BACKGROUND**

On September 18, 2009, JAB Distributors, L.L.C., filed a complaint, alleging that London Luxury, L.L.C., and other named Defendants had infringed Plaintiff's intellectual property, specifically U.S. Patent No. 7,552,489 (the "'489 patent"). (R. 1.) The technology claimed by the relevant patent, which is entitled "Mattress Encasement For Preventing Beg Bug Escapement Via A Zipper Opening," is incorporated within JAB's "PROTECT A BED" product. (*Id.* at ¶¶ 16, 19.) Plaintiff contends that London Luxury's "ALLERGY LUXE" product line infringes the '489 patent. (*Id.* at ¶ 21; R. 51 at 7.) Defendants filed answers that raised numerous affirmative defenses and

asserted declaratory-judgment counterclaims for non-infringement and invalidity. (R. 31; R. 52; R. 53.)

On May 11, 2010, the Court granted Defendants' motion for a stay pending the USPTO's *ex parte* reexamination of all issued claims of the '489 patent. (R. 88.) After the PTO issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate, which provided that a "Certificate will be issued in view of . . . [t]he examiner's finding that all claims are patentable," (R. 91-3 at 4,) the Court granted Plaintiff's motion to lift the stay on June 29, 2010. (R. 96.)

On August 27, 2010, Plaintiff filed the motion to compel that is presently before the Court. (R. 106.) In that motion, JAB sought to require Defendant London Luxury to produce documents responsive to certain of its document requests and to provide JAB with pertinent information for the purpose of scheduling depositions. (*Id.*) More specifically, JAB moved to compel London Luxury to produce sales and financial information, in addition to documents relating to London Luxury's relationship with its retailer, Bed Bath & Beyond, Inc., as well as information necessary for the scheduling of certain depositions. (*Id.*)

On September 23, 2010, the Court granted Plaintiff's motion to compel in part, requiring London Luxury to produce documents relating to its relationship with its dealer and pertaining to mattress-encasement products that are capable of preventing the escapement of bed bugs, and to provide information necessary for the scheduling of depositions. (R. 108.) London Luxury requested leave to file a response to Plaintiff's motion to compel the production of sales and financial information. (*Id.*) The matter is now fully briefed and ripe for decision by the Court.

## LEGAL STANDARD

The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("[T]he scope of discovery should be broad in order to aid in the search for truth."). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Meanwhile, the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 540. In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, district courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008); *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).

## ANALYSIS

I.      **The Parties' Respective Positions**

London Luxury strenuously opposes Plaintiff's motion to compel the production of documents responsive to document requests numbers 11, 12, 13, 25, and 29. (R. 109-1; R. 106

at 4.) First, London Luxury insists, making such proprietary sales information available to its competitor would result in an unacceptable risk of harm to its business. (R. 109 at 1-5.) Second, it argues that the protective order entered in this case provides inadequate protection against such harm. (*Id.*) Third, London Luxury contends that Plaintiff is not entitled to pre-lawsuit financial information, since JAB is foreclosed from seeking damages before it marked its products with the patent number (which, London Luxury asserts, did not occur prior to the initiation of the present lawsuit). (*Id.* (citing 35 U.S.C. § 287).) Finally, Defendant contends that the unit-sales figures it has already produced are sufficient to meet its obligations in responding to the document requests. (*Id.* at 2.)

Plaintiff, for its part, articulates a variety of reasons why the Court should compel London Luxury to produce documents responsive to the pertinent requests. (R. 106.) JAB begins by emphasizing the broad scope of permissible discovery. (*Id.* at 3-4.) It proceeds by explaining its entitlement to pre-lawsuit information on the ground that the commercial success and profitability of a product made under the relevant patent is relevant to the determination of a relevant royalty. (*Id.* at 5 (quoting *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1979).) Plaintiff points to the applicable protective order, which explicitly envisions the sharing of highly confidential information on an attorneys' eyes only basis. (*Id.* at 7-8.) In the presence of such an order, Plaintiff contends, London Luxury should not be allowed to duck its discovery obligations simply by asserting that the documents being sought are in some respect confidential. (*Id.*)

The Court agrees with Plaintiff.

## II. London Luxury Cannot Prevail in its Argument That the Protective Order Is Insufficient to Prevent the Disclosure of the Defendant's Proprietary Sales Information

London Luxury seeks not to produce documentation concerning proprietary sales information to its business competitor's attorneys on the ground that the risk, coupled with the cost, of disclosure is prohibitive. (R. 109-1.) London Luxury points to instances in which JAB has attempted to oust it as Bed Bath & Beyond's mattress-encasement product provider and declares that "JAB will spare no effort or expense to usurp the business that London Luxury has spent years building and cultivating." (*Id.*) These assertions, which are unsupported by any declarations or affidavits, indicate nothing more than a competitive relationship between the two companies. Of course, competition depends on rivalry between companies, which seek to procure business opportunities at the others' expense. *See Menasha Corp. v. News America Marketing In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004) (explaining that socially desirable competition often harms competitors, but benefits consumers). The issue is whether the protective order adequately protects this highly confidential information.

London Luxury's argument necessarily fails, for at least two reasons. First, London Luxury and JAB may be competitors, but the fact of that relationship cannot be enough in itself to justify Defendant's refusal to produce the responsive documents sought by the relevant requests. This principle applies *a fortiori* when, as here, the competitor whose confidential documents are being sought is not a third party to the litigation, but a defendant. *See In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342-43 (N.D. Ill. 2008) (explaining that third parties are at greater risk of harm than parties from disclosure but nevertheless concluding that

"the Objecting Non-Parties' interest should be protected by means of a protective order which prevents disclosure of their confidential documents").

Second, it cannot be—and indeed is not—the case that protective orders become an inadequate mechanism to facilitate the discovery of confidential material whenever producing entities simply declare them so. *Accord United States v. Delaney*, No. 09-10312, 2010 WL 2817190, at *4 (D. Mass. July 15, 2010); *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F. Supp. 2d 298, 302 (D. Mass. 2009); *Philip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, No. 05-cv-64, 2008 WL 4966902, at *5 (D. Utah Nov. 19, 2008); *Excellus Health Plan, Inc. v. Tran*, 222 F.R.D. 72, 74 (W.D.N.Y. 2004). Federal litigation invariably involves discovery of some sensitive information. Indeed, courts have deemed an attorneys' eyes only provision for financial information, including pricing information, sufficient protection for such information. *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, No. 08-CV-5427, 2010 WL 2179170, at *4-5 (N.D. Ill. June 1, 2010); *Inter-Med., Inc. v. ASI Medical, Inc.*, No. 09-CV-383, 2010 WL 2679992, at *1-3 (E.D. Wis. July 1, 2010); *Layne Christensen Co. v. Purolite Co.*, No. 09-2381, 2010 WL 3001744, at *5-6 (D. Kan. July 28, 2010).

A party cannot simply assert—without any support—that the pertinent protective order displays a systemic weakness that renders its prophylactic powers inefficacious. Were it otherwise, a litigant could wholly frustrate the process of discovery that is fundamental to the litigation system. *See Petrovic v. City of Chicago*, No. 06-CV-6111, 2007 WL 2410336, at *4 (N.D. Ill. Aug. 21, 2007) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). It is of little surprise, then, that Defendant does not marshal even a single case for its proposition that

the mere possibility of an inadvertent disclosure of confidential information fatally undermines the operation of a protective order, thus justifying its decision not to produce the sought-after documents. Indeed, in the present case, London Luxury merely provides attorney argument, unsubstantiated by affidavit or declaration, as to the allegedly disastrous effect inadvertent disclosure would have on its business. *See, e.g.*, *K.R. Smith Trucking L.L.C. v. Paccar, Inc.*, No. 08-1351, 2010 WL 1408600, at *3 (D. Kan. Apr. 1, 2010) (declining even to enter a protective order when the claims of harm were conclusory).

The Court also finds no force in London Luxury's argument that it cannot produce the sought-after financial information because that information is the subject of a confidentiality agreement between it and its customer, Bed Bath & Beyond. (R. 109 at 4-5.) Defendant's asserted position conflicts with the relevant case law. *See In re Subpoenas Duces Tecum Served on Bell Communications Research, Inc.*, No. MA-85, 1997 WL 10919, at *2-3 (S.D.N.Y. Jan. 13, 2007); *Mike v. Dymon, Inc.*, No. 95-2405, 1996 WL 606362, at *3 (D. Kan. Oct. 17, 2005). Defendant proffers no case in support of its argument that a confidentiality agreement precludes a party from producing documents pursuant to a protective order.

In rejecting London Luxury's contention that the protective order in place is inadequate to ensure the secure production of competitively sensitive information, the Court emphasizes its belief that all attorneys in this case will abide by their duties. *Accord Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) ("We will not assume that counsel would breach the duty of an officer of the court by disclosing the sales information to Truswal or to any Hydro-Air competitor in violation of a protective order."). Defendant is concerned by a statement of JAB's counsel that London Luxury's financial information is

relevant for the evaluation of potential settlement offers. (R. 109 at 4.) London Luxury asks how such information could aid in the assessment of settlement offers if only the Plaintiff's attorneys, and not the Plaintiff itself, can view it. (*Id.*) The Court is not similarly troubled. Plaintiff's attorneys can view confidential documents and use them to inform their larger recommendation to their client as to the desirability of a proposed course, without communicating private information contained in those documents. Of course, the Court expects both parties' attorneys to abide by the highest duties and ethical standards that are required of them.

### III.   Plaintiff Is Entitled to Pre-Lawsuit Financial Information

London Luxury disputes Plaintiff's entitlement to pre-lawsuit financial information, primarily on the ground that Plaintiff cannot obtain damages from any sales that predated the lawsuit. (R. 109 at 5-8.) This argument fails to consider that information's likely relevance to the calculation of damages, should Plaintiff subsequently establish infringement. If, as is alleged, Defendant's "ALLERGY LUXE" product line infringes the '489 patent, then that line would incorporate the patented technology. It is not the case, therefore, that the well-known *Georgia Pacific* factors "do not relate to the profitability of the *accused* product." (R. 109 at 6 (emphasis in original).) To the contrary, the profitability of an infringing product is axiomatically relevant to the "hypothetically negotiated license for the *patented* product," which the Defendant concedes to be the appropriate inquiry in computing damages. (*Id.* (emphasis in original).)

London Luxury draws a false analytic divide between a patentee's intellectual-property-bearing product and a third party's patent-infringing product. It is a foundational principle of

8

patent law that infringement need not be intentional—indeed, it can be wholly inadvertent. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 645 (1999). If two products operate, either literally or equivalently, within the claims of the relevant patent, then regardless of whether the accused infringer was subjectively aware of the infringement, both are "product[s] made under the patent" for the purpose of *Georgia-Pacific* factor number 8. Of course, knowledge and intent are relevant to damages in the event of proven infringement, *College Sav. Bank*, 527 U.S. at 645, but the absence of those states does not render an infringing product's pre-notice profitability irrelevant. To the contrary, "the established profitability of the product made under the patent; its commercial success; and its current popularity" are unequivocally relevant to the determination of a reasonable royalty for the purpose of calculating damages. *Georgia-Pacific*, 318 F. Supp. at 1120. If London Luxury's accused product is found to infringe the '489 patent, then, regardless of then-existing notice or intent, the pre-lawsuit success, popularity, and profitability of the Defendant's patented-technology-incorporating product are most decidedly relevant to the calculation of a reasonable royalty for the use of said technology.[1]

Furthermore, Plaintiff is correct to point out that sales information, including that which pre-existed the present lawsuit, is relevant to the obviousness of the patented technology. (R. 106 at 6.) London Luxury has asserted that the '489 patent fails the obviousness bar of 35 U.S.C. § 103. (R. 31 at 12.) Although certainly not determinative, the profitability of a product incorporating an allegedly obvious technology is relevant to the question whether the claimed

---

[1] Pre-lawsuit financial information is also relevant to the "portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Georgia-Pacific*, 318 F. Supp. at 1120.

9

invention goes beyond "the results of ordinary innovation [which] are not the subject of exclusive rights under the patent laws." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007); *DeGregorio v. Philips Electronics N. Am. Corp.*, No. 07-CV-2683, 2007 WL 4591966, at *2 (N.D. Ill. Dec. 18, 2007).

Finally, the Court agrees with Plaintiff that the profitability of the accused product is likely relevant to the determination of willful infringement, as greater profitability translates into a possible financial motive for knowingly infringing the '489 patent. (R. 106 at 6.) *Accord Amsted Indus., Inc. v. Nat'l Castings, Inc.*, No. 88-CV-0924, 1989 WL 68393, at *1 (N.D. Ill. June 15, 1989). London Luxury may be correct to point out that an infringer cannot be deemed liable in damages for willful infringement of a patent of which it was not aware. (R. 109 at 7-8.) This observation, however, is distinct from the question whether a company, after learning or otherwise receiving notice of a blocking patent, nevertheless proceeded to market its product in a willful manner.

## CONCLUSION

For the preceding reasons, the Court grants the remainder of Plaintiff's motion to compel Defendant London Luxury, L.L.C., to respond to Plaintiff's discovery requests. (R. 106.)

**Dated:** October 13, 2010

                                                              **ENTERED**

                                                        **AMY J. STUEVE**
                                                        **United States District Judge**